IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE          *     MDL Docket No. 2004
                                         4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS      *
                                         Case No.
LIABILITY LITIGATION               *     4:12-cv-276 (B. BURCH)
_____

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Barbara Burch was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Mrs. Burch brought this product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Burch also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mrs. Burch's husband Rufus asserts a loss of consortium claim. Mentor seeks summary judgment on several of Mrs. Burch's claims. For the reasons set forth below, Mentor's Motion for Partial Summary Judgment (ECF No. 38 in 4:12-cv-276) is granted in part and denied in part.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the record reveals the following. Plaintiffs are residents of Florida, and all of Mrs. Burch's medical treatment relevant to this action occurred in Alabama.

In 2004, Mrs. Burch saw Dr. John Peacock for treatment of stress urinary incontinence and other symptoms. Dr. Peacock implanted ObTape in Mrs. Burch on July 2, 2004. Mrs. Burch did not speak with any Mentor representatives or see any information from Mentor prior to the surgery. But Dr. Peacock did receive information from Mentor, including the ObTape product information sheet, which disclosed certain complication rates for ObTape. Complication rates are important to Dr. Peacock in determining whether to use a product; based on ObTape's product

information data sheet, Dr. Peacock understood that erosions and infections occurred "very rarely."  Peacock Dep. 110:24-111:15, 169:25-170:2, ECF No. 43-6.  Mrs. Burch pointed to several studies concluding that ObTape's complication rate exceeds 5%, and Dr. Peacock testified that complications are not "very rare" at that rate.  Peacock Dep. 170:3-13.

Mrs. Burch asserts that she suffered several injuries caused by ObTape.  Mrs. Burch did not return to Dr. Peacock for treatment of these symptoms, and her ObTape has never been explanted.

Plaintiffs filed their Complaint on October 15, 2012.  *See generally* Compl., ECF No. 1 in 4:12-cv-276.  Mrs. Burch brought claims for personal injury based upon the following theories: negligence, strict liability design defect, strict liability manufacturing defect, strict liability failure to warn, breach of implied and express warranties, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation.  Mr. Burch brought a loss of consortium claim.

DISCUSSION

Plaintiffs filed their action in this Court under the Court's direct filing order.  The parties agree that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint."  Order Regarding Direct Filing § II(E), ECF

No. 446 in 4:08-md-2004.  Florida's choice of law rules thus apply.  Plaintiffs contend that under Florida's choice of law rules, Florida law applies.  Mentor does not seriously dispute that Florida law applies.[1]  The Court recently decided a Florida choice-of-law issue under factually indistinguishable circumstances.  *See Taylor v. Mentor*, Order Den. Mot. for Summ. J. 5-8, ECF No. 54 in 4:12-cv-176 (M.D. Ga. Aug. 4, 2015).  For the reasons stated in that order, Florida law applies to Plaintiffs' claims here.

Mentor seeks summary judgment on Mrs. Burch's claims for manufacturing defect, breach of the continuing duty to warn, breach of express warranty, and fraudulent and negligent misrepresentation.  The Court addresses each issue in turn.

## I.  Manufacturing Defect

Mrs. Burch asserts that her ObTape has a manufacturing defect.  A manufacturing defect exists if a product "is different from its intended design and fails to perform as safely as the intended design would have performed."  *In re Standard Jury Instructions in Civil Cases – Report No. 13-01 (Products Liability)* § 403.7(a), 160 So. 3d 869, 874 (Fla. 2015) (adopting manufacturing defect definition in pattern jury

---

[1] Mentor contends that a choice of law analysis is unnecessary because there is no conflict between Alabama and Florida law on the issues raised in Mentor's summary judgment.  Plaintiffs, however, pointed out that Florida recognizes a continuing duty to warn claim, while Alabama does not.

instructions).   To establish a manufacturing defect, a plaintiff must present evidence that the product did not meet manufacturing specifications and that the defect proximately caused the plaintiff's injuries.  *Edward M. Chadbourne, Inc. v. Vaughn*, 491 So. 2d 551, 553 (11th Cir. 1986).[2]

Mrs. Burch's claim for manufacturing defect is based on the same evidence that the Phase I Georgia Plaintiffs presented in opposition to summary judgment: evidence that (1) ObTape's product specifications called for pores measuring between 40 and 100 microns and (2) tests of ObTape samples revealed "non-uniform pores, some of which are closed-ended pores and the vast majority of which are smaller than 40 microns."  *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1376 (M.D. Ga. 2010).  Based on that evidence, the Court found a genuine fact dispute on the Phase I Georgia Plaintiffs' manufacturing defect claims.  *Id.*

Mentor contends that Mrs. Burch cannot make out a manufacturing defect claim because she did not point to any evidence that an expert examined her specific ObTape—which is still in her body—and opined that it has a manufacturing defect.

---

[2] The Florida standard for manufacturing defect is substantially the same as the Georgia standard.  *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1365 (M.D. Ga. 2010) ("[I]n a manufacturing defect case, the 'product's defectiveness is determined by measuring the product in question against the benchmark of the manufacturer's designs.'") (*quoting ACE Fire Underwriters Ins. Co. v. ALC Controls, Inc.*, No. 1:07-CV-606-TWT, 2008 WL 2229121, at *2 (N.D. Ga. May 28, 2008)).

One way to prove a manufacturing defect is to test the specific subject product against manufacturing standards, but Mentor did not point the Court to any authority that such testing is the *only* way to establish a manufacturing defect under Florida law. Here, Mrs. Burch relies on the same evidence as the Phase I Georgia Plaintiffs, whose specific ObTape was not tested, either. Rather, their experts tested a number of ObTape samples and concluded that a substantial portion of each ObTape tested had pores smaller than 40 microns. *In re Mentor*, 711 F. Supp. 2d at 1376. At this time, the Court remains satisfied that this evidence is sufficient to create a genuine fact dispute on Mrs. Burch's manufacturing defect claim.[3] Mentor's summary judgment motion on the manufacturing defect claim is thus denied. The Court may reconsider this issue when ruling on any motion for judgment as a matter of law that may be presented at trial.

## II.  Misrepresentation and Breach of Express Warranty Claims

Mentor contends that Mrs. Burch cannot make out her misrepresentation and warranty claims because *she* did not rely on any misrepresentations from Mentor regarding ObTape. Mrs. Burch does not dispute that reliance is a key element of her fraudulent misrepresentation, negligent misrepresentation, and breach of express warranty claims. *See, e.g.,* Fla. Stat. Ann.

---

[3]  Because Mrs. Burch presented sufficient evidence to establish a manufacturing defect in ObTape, it is unnecessary for the Court to apply the inference described in *Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1148 (Fla. Dist. Ct. App. 1981).

§ 672.313(1)(a) (requiring that an affirmation become "part of the basis of the bargain" to create "an express warranty that the goods shall conform to the affirmation or promise"); *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 653 (Fla. Dist. Ct. App. 2006) (requiring justifiable reliance on a misrepresentation).

Mrs. Burch's fraudulent misrepresentation, negligent misrepresentation, and breach of express warranty claims are all based on her contention that Mentor misrepresented the ObTape complication rate to Dr. Peacock and Dr. Peacock relied on that misrepresentation in selecting ObTape to treat Mrs. Burch. Thus, Mrs. Burch's misrepresentation and breach of express warranty claims appear to be based on the same underlying facts as her pre-implant failure to warn claim. Mentor did not move for summary judgment on Mrs. Burch's pre-implant failure to warn claim. The Court is satisfied that a genuine fact dispute exists on whether (1) Mentor misrepresented ObTape's complication rate to Dr. Peacock and (2) Dr. Peacock relied on those misrepresentations in selecting ObTape for Mrs. Burch. At least one Florida district court has concluded that the Florida courts would apply the learned intermediary doctrine to all claims based on a medical device manufacturer's alleged failure to warn of the risks of the device, regardless of what theory those claims are brought under. *Beale v. Biomet, Inc.*, 492 F. Supp. 2d 1360, 1373 (S.D. Fla. 2007); *cf. Thursby v. Reynolds*

7

*Metals Co.*, 466 So. 2d 245, 250 (Fla. Dist. Ct. App. 1984) (considering, in evaluating the express warranty claim of a plaintiff who was injured when a machine at his workplace malfunctioned, whether the injured plaintiff's employer's equipment procurement company relied on the seller's statements in making its decision to purchase the machine). Mentor did not point to any authority suggesting that the Florida courts would *not* apply the learned intermediary doctrine to Mrs. Burch's misrepresentation and breach of express warranty claims. For all of these reasons, the Court denies summary judgment as to these claims.

### III. Continuing Duty to Warn

Mrs. Burch also contends that Mentor did not provide adequate warnings about the risks of ObTape to her doctor after she was implanted with it. Florida law does recognize a continuing duty to warn. *See Sta-Rite Indus., Inc.*, *v. Levey*, 909 So. 2d 901, (Fla. Dist. Ct. App. 2004) (finding that swimming pool pump manufacturer could be liable for injuries caused by inadequate warnings because it did not send updated warnings to its distributors). Citing *Sta-Rite* and *Munoz ex rel. Munoz v. South Miami Hospital, Inc.*, 764 So. 2d 854, 857 (Fla. Dist. Ct. App. 2000), Mrs. Burch argues that she need not prove that her post-implant medical care would have changed if Mentor had provided additional post-sale warnings; she appears

to contend that the Court may simply presume that it would have. *Sta-Rite* and *Munoz* stand for the proposition that under Florida law, the courts may assume that an adequate warning would have been heeded. But the cases do not dispense with the causation requirement entirely. In *Sta-Rite*, the court presumed that the pool owner would have heeded a more stringent warning regarding the hazards of a pool pump and would have fixed the grate over the pump in time to avoid the plaintiff's injuries.[4] *Sta-Rite*, 909 So. 2d at 906. And in *Munoz*, a medical malpractice case, there was a fact question as to whether the pediatrician would have diagnosed and treated a newborn baby's kidney condition had the obstetrician or nurses notified him of a sonogram that suggested a problem with the baby's kidneys.[5] *Munoz*, 764 So. 2d at 856-57. Thus, all *Sta-Rite* and *Munoz* allow the Court to presume is that Dr. Peacock would have paid attention to an additional warning that ObTape may have a higher rate of infection than other slings. The cases do not, however, permit the Court to speculate as to what Dr. Peacock would have done with those warnings.

The causation issue here is not as simple as it was in *Munoz* or *Sta-Rite*. In *Munoz*, there was enough evidence in the

---

[4] In *Sta-Rite*, there was evidence that the pool owner would have heeded a more stringent warning. 909 So. 2d at 906.
[5] In *Munoz*, the pediatrician made inconsistent statements, and the court found a fact question on causation based on all the circumstances in that case. 764 So. 2d at 856-57.

record for a jury to determine that the pediatrician would have made the right diagnosis had he been given the sonogram results. *Id.* And in *Sta-Rite*, there was enough evidence for a jury to find that the pool owner would have heeded a warning to fix the grate over the pump in time to prevent the plaintiff's injuries. *Sta-Rite*, 909 So. 2d at 906. This case, however, involves a complex decision regarding a medical device that had already been implanted in Mrs. Burch's body.

The undisputed evidence in the present record is that Mrs. Burch never sought medical treatment from Dr. Peacock after her ObTape implant. Thus, there was no reason for Dr. Peacock to suspect that Mrs. Burch might have any adverse symptoms caused by ObTape and no reason for him to provide any additional treatment to her. And there is absolutely no evidence in the present record suggesting that additional warnings about the ObTape infection rate should have caused Dr. Peacock to contact his otherwise healthy patients and suggest that they undergo additional medical treatment for symptoms they did not have. In sum, the Court finds it highly unlikely that the Florida courts would presume causation under the circumstances of this case. Absent a presumption that relies on pure speculation, no reasonable juror could conclude based on the present record that any post-implant failure to warn caused any of Mrs. Burch's injuries, and her continuing duty to warn claim thus fails.

CONCLUSION

As discussed above, Mentor's Motion for Partial Summary Judgment (ECF No. 38 in 4:12-cv-237) is granted in part and denied in part. The Court grants summary judgment on Mrs. Burch's continuing duty to warn claim. The Court denies summary judgment on Mrs. Burch's claims for manufacturing defect, fraudulent misrepresentation, negligent misrepresentation, and breach of express warranty. Those claims, along with Mrs. Burch's claims for negligence, strict liability design defect, strict liability failure to warn, and fraudulent concealment remain pending for trial. Mr. Burch's loss of consortium claim also remains pending for trial.

Within seven days of the date of this Order, the parties shall notify the Court whether the parties agree to a *Lexecon* waiver.

IT IS SO ORDERED, this 29th day of September, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

11